# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BAY FASTENERS & COMPONENTS, INC., a Florida Corporation, | ) ) ) |
| Plaintiff, | ) Case No. 17-CV-03995 ) |
| v. | ) ) |
| FACTORY DIRECT LOGISTICS, LLC, dba FDL Fasteners, an Illinois Limited Liability Company; DANIEL LONG, an agent of FACTORY DIRECT LOGISTICS, LLC; and LAWRENCE PALMER, individually and as an agent of FACTORY DIRECT LOGISTICS, LLC, | ) Honorable Joan B. Gottschall ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

After the president of a corporation left to work at a competing business, the former employer, plaintiff here, brought four claims in its verified amended complaint ("AC"). (Verified Am. Compl., ECF No. 34.) In Count I of the AC, plaintiff alleges that defendants have misappropriated its trade secrets, thus violating the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C.A. § 1836 (West 2018). In Count II, defendant Lawrence Palmer ("Palmer") is alleged to have breached a fiduciary duty under Florida law, and plaintiff alleges in Count III that defendant Daniel Long ("Long") has aided and abetted Palmer's breach of fiduciary duty. Plaintiff withdrew Count IV, which was an unfair competition claim. Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part because plaintiff has failed to state claims under state law, and denied in part because plaintiff has sufficiently alleged a DTSA claim.

## I. FACTS

For the purposes of a Rule 12(b)(6) motion, factual allegations in a complaint are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plaintiff Bay Fasteners & Components, Inc. ("BFC") is a Florida corporation with its principal place of business in Tampa, Florida. (AC ¶ 7, ECF No. 34.) Defendant Factory Direct Logistics, LLC ("FDL") is an Illinois limited liability company with its principal place of business in Schaumburg, Illinois. (*Id.* ¶ 9.) Other defendants are Long, the current president and CEO of FDL, and Palmer, formerly the president of BFC and currently an employee of FDL. (*Id.* ¶¶ 13–14.) BFC is in the business of supplying fasteners to customers ranging in size from Fortune 500 companies to local manufacturing companies. (*Id.* ¶ 8.) FDL is in the business of importing and distributing fasteners and other c-class hardware throughout the United States, including within this judicial district. (*Id.* ¶ 10.) In the past, FDL supplied fasteners to BFC for sale to BFC's customers. (*Id.* ¶ 11.)

Defendant Palmer worked for BFC for 25 years, and he served as its president for approximately 15 years until April 2017. (*Id.* ¶ 11.) In or about May 2017, FDL hired Palmer to open and run an FDL facility in Tampa, Florida and directly compete with BFC. (*Id.* ¶ 18.) On May 19, 2017, Defendant Long informed BFC by email of Palmer's employment with FDL and informed BFC that it would no longer supply BFC with fasteners due to a conflict of interest. (*Id.* ¶ 51.) Long and FDL have stated that they plan to solicit business, and have since solicited business, from BFC's customers through Palmer. (*Id.* ¶ 5.)

With respect to the efforts made by BFC to protect its confidential information, BFC alleges that it "utilizes secured login procedures for employees, implements a shredding procedure for customer information, and limits employees' access of [sic] documents based on [an] employee's position within the company." (*Id.* ¶ 26.) Moreover, BFC employees, including

Palmer, receive an employee handbook "that specifically mentioned non-disclosure of confidential information" listing as confidential information "Computer Programs, Computer Programs and Codes, Customer Lists, Financial Information, New Materials Research, [and] Proprietary Production Processes." (*Id.* ¶¶ 28–29.) In 2001, Palmer acknowledged receipt of the employee handbook, containing its non-disclosure policy. (*Id.* ¶ 30.) BFC also alleges that it restricts access to its offices, activates security systems after work hours, or both. (*Id.* ¶ 32.) BFC's trade secrets are alleged to allow it to "recover, receive, process, market, price, and distribute its products to other companies more efficiently, effectively, and safely" commensurate to the standards and needs of its customers. (*Id.* ¶ 33). BFC also alleged that it spent 20-years developing a "near-permanent relationship" with its customers. (*Id.* ¶ 35.) BFC derives economic value from keeping its confidential information confidential, and the resources it has devoted to developing its customers and customer contact lists, including its customers' preferences and needs, have allowed BFC to obtain a competitive advantage over other companies that supply fasteners. (*Id.* ¶¶ 27, 37.)

BFC also alleges that before May 3, 2017, FDL and BFC discussed the possibility of FDL purchasing BFC. (*Id*. ¶ 40.) Pursuant to the companies' longstanding relationship, BFC disclosed certain, but not all, of its financial records and other confidential information to FDL. (*Id.* ¶ 41.)

Because of his trusted, executive level position with BFC, Palmer had access to BFC's customer list and other alleged trade secrets, and was involved with all of BFC's suppliers and customers. (*Id.* ¶ 44.) Palmer was in charge of maintaining the accounts (*id.* ¶ 45), and had access to company sales and profit information, product specifications, pricing, customer product specifications and customer contact lists (*id.* ¶ 46). His position gave him insight into each

3

customer's wants, needs, and dislikes, as well as critical pricing and profitability information. (*Id.* ¶ 47.)

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss a complaint, the court accepts as true all well-pleaded allegations and draws all reasonable inferences in the plaintiff's favor. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The complaint must provide the defendant with fair notice of the claim and must be facially plausible. *Prominence Advisors, Inc. v. Dalton*, No. 17 C 4369, 2017 WL 6988661, at *2 (N.D. Ill. Dec. 18, 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To state a claim that is facially plausible, plaintiffs must plead enough facts to establish that their right to relief is more than merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When the plaintiff pleads enough factual allegations allowing the court to draw the reasonable inference that the defendant is liable, then the complaint will survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 556). Finally, there is no heightened pleading requirement in DTSA actions. *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-cv-5966 (JSR), 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017).

## III. ANALYSIS

Defendants move to dismiss plaintiff's DTSA claims, contending that plaintiff has failed to identify any alleged trade secrets; that plaintiff has failed to identify that it takes steps to preserve the confidentiality of its customers, wants or needs; and that plaintiff has failed to allege that anything was acquired through improper means. Additionally, defendants move to dismiss plaintiff's Florida state law claims, contending that defendant Palmer owed no fiduciary duty at the time of the challenged action, and that even if plaintiff properly alleged state law claims, they

4

would nevertheless be preempted under the Florida Uniform Trade Secrets Act. FLA. STAT. § 688.008 (West 2018).

### A. Defend Trade Secrets Act Claim Against Defendants (Count I).

The DTSA provides a private right of action for an owner of a trade secret that has been misappropriated. 18 U.S.C.A. § 1836(b) (West 2018). The DTSA contains a definition for trade secret:

> [T]he term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if
>
> > (A) the owner thereof has taken reasonable measure to keep such information secret; and
>
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C.A. § 1839 (3)(A)–(B).

For a complaint alleging a violation of the DTSA to survive a motion to dismiss, a plaintiff "must identify the purported trade secrets, but it may do so generally to avoid publicly disclosing the information in court filings." *Well Lamont Industry Group, LLC v. Mendoza*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017); *accord Prominence Advisors, Inc. v. Dalton*, No. 17 C 4369, 2017 WL 6988661, at *3 (N.D. Ill. Dec. 18, 2017) ("[A] complaint need only identify the alleged trade secret in a general sense") (citations omitted).

The trade secrets allegations made by plaintiff in its amended complaint are as follows. BFC supplies durable and quality fasteners to countless customers and monitors each customer's buying patterns. It purchases stock accordingly. Over the years, BFC has invested "thousands of

dollars and countless hours of dedicated efforts" to create a list of customers, customer contact information, customer product specifications, and buying practices. (AC ¶ 29.)

Defendants contend that plaintiff's trade secrets allegations fail as a matter of law "because broad and conclusory references to customer data are not sufficient to state a claim" (Mem. Supp. Mot. to Dismiss at 4, ECF No. 34), but the cases on which defendants rely are not pleading cases. They are rather cases that address what must be proven to prevail at trial or on summary judgment. *MaxPower Corp. v. Abraham*, 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008), cited by defendants at page 5 of their Memorandum, addresses what plaintiff must show when defendants, in contesting a motion for a preliminary injunction, have produced evidence that shows that what plaintiff alleges as a trade secret was in fact common knowledge in the industry.[1]

Applying Florida's Uniform Trade Secrets Act, §688.002(4), Florida courts recognize that customer lists can constitute trade secrets "when the list is not just a compilation of information readily available to the public, but rather acquired or compiled through the owner's industry." *Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So.3d 804, 808 (Fla. Dist. Ct. App. 2015) (citations omitted). *See also Bright House Networks, LLC v. Cassidy*, 129 So.3d 501, 506 (Fla. Dist. Ct. App. 2014) (same, applying Florida law prior to UTSA).

Given that the DTSA's definition of trade secret is very broad, *see* 18 U.S.C. §1839(3), and given that the cases indicate that trade secrets may be alleged generally to survive a motion to dismiss, the court finds the plaintiff's allegations, while general, are sufficient. Plaintiff has alleged that it derived economic value from the alleged secrets not being generally known to

---

[1] *MaxPower* was decided under Wisconsin law, but inasmuch as the Wisconsin statute is essentially identical to the DTSA, the court may look to the state UTSA when interpreting the DTSA. *See Kuryakyn Holdings, LLC v. Ciro*, 242 F. Supp. 3d 789, 797 (W.D. Wis. 2017). While defendants correctly describe what *Kuryakyn* says about plaintiff's burden to establish trade secret protection, it is a summary judgment case, not a pleading case.

6

other persons who could obtain economic value from their disclosure or use.  Here, plaintiff alleges that defendants vowed to use such information to their competitive advantage.  Additionally, there is no heightened pleading requirement for DTSA claims.  *Tesla* 2017 WL 6988661, at *3.  The motion to dismiss on this ground is denied.

With respect to the steps plaintiff alleges it took to keep its purportedly confidential information confidential, the result, with the exception discussed below, is the same.  In *Arko Plumbing Corp. v. Rudd*, 230 So.3d 520, 529–30 (Fla. Dist. Ct. App. 2017), the court found that maintaining customer pricing information in a password-protected file and limiting access to two employees were "the sorts of reasonable efforts to maintain secrecy required by the trade secret statute."  *See generally Am. Ctr. for Excellence in Surgical Assisting, Inc. v. Comty. Coll. Dist. 502,* 190 F. Supp. 3d 812, 822 (N.D. Ill. 2016) (applying comparable Illinois law, where plaintiff alleged only that persons accessing the information were requested to sign a non-disclosure statement but failed to allege that any defendant signed one).  The court denied the motion to dismiss, noting that determining what is a reasonable precaution requires a balancing of costs and benefits that will vary from case to case.  *Id.* at 822.

In this case, if, as is likely, Palmer, as president, had access to all of plaintiff's information and was very familiar with its commercial value, it is possible, indeed likely, that the steps plaintiff took to protect its information—allowing limited access based on the employee's position, making the competitive information password-protected, and maintaining shredding policies—were adequate under the circumstances.  Plaintiff's security measures, from all that is alleged in the complaint, seem fairly relaxed given the value plaintiff argues the information had, but it is impossible at this stage of the case to conclude that the measures plaintiff took, in giving

7

its president complete access and relying on him to understand the confidentiality procedures of which he was made aware, were inadequate. The motion to dismiss on this basis is denied.

However, in one respect it does not appear that plaintiff took reasonable measures to protect its trade secrets. In paragraph 40 of the AC, plaintiff alleges that on or before May 3, 2017, FDL and BFC had discussions via email about an FDL purchase of BFC. In paragraph 41, plaintiff alleges that it disclosed certain financial records and other confidential information to FDL. Plaintiff never alleges, however, that it took *any* measures to safeguard the confidentiality of this information, such as by obtaining a promise of confidentiality from FDL. It is obvious that as to this information, given that BFC is alleged to have taken *no* measures to protect the confidentiality of this information, BFC cannot state a DTSA claim as to anything it disclosed to FDL in this correspondence. *See Am. Ctr.*, 190 F. Supp. 3d at 821. *See also PrimeSource Bldg. Prods., Inc. v. Huttig Bldg. Prods., Inc.*, No. 16 CV 11390, 2017 WL 7795125, at *13 (N.D. Ill. Dec. 9, 2017) (stating that a supplier's identity does not constitute a trade secret unless the owner takes steps to maintain its confidentiality) (citations omitted). Before authorizing discovery on the trade secret claim when it is manifest that some of the alleged trade secrets were not protected, BFC is ordered to amend the complaint to make clear, at least in general terms, what was disclosed to BFC and what was not. Only the latter can possibly qualify as trade secrets. To that extent, the trade secret claim is dismissed with leave to replead.

Finally, defendants argue that plaintiff fails to allege that anything was acquired through improper means, defined in 18 U.S.C. §1839(6) as including, among other things, theft, bribery or espionage. Plaintiff responds that it has adequately alleged improper means in alleging a "breach of a confidential relationship or other duty to maintain secrecy or limit use." (Pl.'s Resp. Opp'n to Defs.' Mot. to Dismiss at 8, ECF No. 47.) Plaintiff has omitted some of the words in

the statutory phrase, which reads in full: "breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. §1839(6). Plaintiff's reading is as good as any the court can come up with, and plaintiff has alleged enough to satisfy this requirement.

In addition, the DTSA provides that a civil action may be brought by an owner of a trade secret "that is misappropriated." 18 U.S.C. §1836(b). "Misappropriation" is defined in 18 U.S.C. §1839(5) to mean, among other things,

> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

As far as the court can tell from the provisions of the statute just quoted, the concept of "improper means" does not necessarily enter into all parts of the definition of "misappropriation," and it is "misappropriation" which 18 U.S.C. §1836(b) requires the plaintiff to plead and prove, not "improper means." Regardless of whether "improper means" includes, as plaintiff argues, the breach of a duty to maintain secrecy or whether the statute is satisfied by disclosure or use of a trade secret by a person who knew that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret, plaintiff has pleaded enough.

According to the complaint, Palmer disclosed and/or used BFC's trade secrets without consent when, at the time of the disclosure or use, he allegedly knew or had reason to know that he had acquired knowledge of the trade secrets under circumstances, namely his high executive position, giving rise to a duty to maintain their secrecy or limit their use. Again, whether "improper means" means "breach of a confidential relationship or other duty to maintain secrecy or limit use" or whether misappropriation does not require improper means at all, plaintiff has

9

alleged enough. The motion to dismiss on the grounds that the trade secret was not misappropriated through "improper means" is denied.

### B. Plaintiff's Breach of Fiduciary Duty Claim

Plaintiff has pleaded that this court has supplemental jurisdiction over Count II, the Florida state-law claim alleging that Palmer breached his fiduciary duty to BFC. BFC alleges that Palmer breached his fiduciary duty by usurping business opportunities and competing with BFC when he used his knowledge of customer information to solicit business for FDL. To bring a claim for breach of fiduciary duty under Florida law, plaintiff must establish (1) the existence of a fiduciary duty, (2) the defendant breached that duty, and (3) the injury was proximately caused by the breach. *See, e.g.*, *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1223 (S.D. Fla. 2015) (citing *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)).

Generally, under Florida law, a fiduciary duty terminates upon the resignation of the officer or severance of the official relationship. *See, e.g.*, *Renpak, Inc. v. Oppenheimer*, 104 So.2d 642, 644 (Fla. Dist. Ct. App. 1979) ("After there has been a severance of official relationship. . . generally a director or officer occupies no relation to the corporation of trust or confidence and deals with it thereafter like any other stranger; and he is not precluded from engaging in a competing business."); *see also Gregg v. U.S. Indus., Inc.*, 715 F.2d 1522, 1541 (11th Cir. 1983); *Lindquist v. Linxian*, No. 11-23876-Civ., 2012 WL 3811800, at *5 (S.D. Fla. Sept. 4, 2012). Here, BFC has failed to allege the breach of a fiduciary duty because no fiduciary duty existed at the time of the alleged breach.

In *Renpak*, the court held that after the defendant resigned from his position as an officer of the plaintiff corporation, he no longer owed his former employer a fiduciary duty. *Renpak*, 104 So.2d at 644. In rejecting the argument that defendant's use of client information to solicit

10

business for a new company constituted a breach of fiduciary duty, the *Renpak* court held that no fiduciary duty existed and a person is generally free to compete with a former employer absent a covenant not to compete. *Id.*

Much like the defendant in *Renpak* whose post-employment actions were challenged as a breach of fiduciary duty, BFC sues Palmer for actions that took place after his resignation as president of BFC. (AC ¶¶ 49–51, 71–75.) Furthermore, BFC does not allege that Palmer executed a covenant not to compete. Under Florida law, Palmer's fiduciary duty terminated upon his resignation, leaving him generally free to engage in a competing business. *Renpak*, 104 So.2d at 644. Because there can be no breach of fiduciary duty when no duty exists, BFC's claim for the breach of fiduciary duty is dismissed.

### C. Plaintiff's Remaining Florida State Law Claims (Counts III and IV)

Defendant moves to dismiss the remaining Florida state law claims. Plaintiff's claim that Long aided and abetted Palmer in breaching a fiduciary duty is dismissed. Long could not have aided Palmer in breaching a fiduciary duty because such a claim requires Palmer to have breached a fiduciary duty in the first place. *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 978 (11th Cir. 2015) (per curiam) (citing *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013)). Finally, the court need not address Count IV because plaintiff has voluntarily dismissed it. (Pl.'s Resp. 14, ECF No. 47.)

### IV. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss, ECF No. 35, is granted in part and denied in part. Counts II, III, and IV of plaintiff's verified amended complaint are dismissed. The motion is denied as to Count I but the plaintiff is ordered to amend the complaint to make clear which information was voluntarily disclosed without restriction to FDL, and is

consequently not protectable.  The amended complaint is due on or before April 10, 2018.  A status conference is set for April 18, 2018, at 9:30 a.m.


Date:  March 20, 2018                              /s/
                                            Joan B. Gottschall
                                            United States District Judge